UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWNA WELLS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SKYNET DIGITAL, LLC, an Idaho limited liability company, d/b/a MEDICAL SPECIALTIES OF IDAHO; and AARON J. ALTENBURG, M.D., individually,<br><br>　　　　Defendant. | Case No. 414-cv-00450-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Plaintiff Shawna Wells' Amended Motion for Leave to File Amended Complaint (Dkt.21). For the reasons explained below, the Court will grant the motion.

## BACKGROUND

Wells filed a complaint against Defendants Skynet Digital, LLC ("Skynet") and Aaron J. Altenburg, M.D. ("Altenburg") on October 22, 2014 (Dkt.1). The complaint alleged a variety of claims related to Wells's dismissal from Skynet.

During initial disclosures, Wells learned of additional facts and sought to amend her complaint. Defendants would not agree to the proposed amended complaint, so Wells filed her first motion to amend on January 22, 2015.

Defendant Altenburg filed a response to that motion, attaching declarations which contained yet more information not known to Wells. This included statements and documents pertaining to the employment relationship between Skynet, Altenburg, and Aaron J. Altenburg, M.D., P.C. ("Altenburg PC"). Wells therefore withdrew her original motion to amend and filed the pending second motion to amend on February 27, 2015 (Dkt. 16). Defendant Altenburg opposes the motion.

Alternburg has also filed a motion to dismiss Count Six (Dkt. 9). The pending motion to amend removes Count Six from the complaint. Therefore, by granting the motion to amend as explained below, the motion to dismiss is rendered moot.

## LEGAL STANDARD

Generally, leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend lies within the sound discretion of the trial court, which "must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). Thus, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." *Id*. (citation omitted); *see Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989).

The United States Supreme Court has identified four factors relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Ninth Circuit holds that these

factors are not of equal weight; specifically, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *Webb*, 655 F.2d at 980; accord *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.1999). The most important factor is whether amendment would prejudice the opposing party. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973). But futility of amendment can, by itself, justify denial of a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995). A proposed amended pleading is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. RykoffSexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988).

## ANALYSIS

**1. Motion to Amend**

Three of the factors the Court must address when considering whether to allow amendment – undue delay, bad faith or dilatory motive, and prejudice to the opposing party – are of little significance here. Accordingly, the Court will address those three factors in short order. The Court will then address the fourth factor – futility of amendment – in more detail. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**A. Undue Delay**

Although Altenburg claims that the timing of the amended complaint shows a lack of diligence, Wells explains that the amendment could not have been filed earlier because it incorporates information she obtained from initial disclosures. She filed the motion to

amend not long after receiving that information. Therefore, there has been no undue delay.

### B. Bad Faith or Dilatory Motive

Altenburg takes issue with Wells changing and updating exact names of parties, their legal status, and their relationship one to another. But these are changes due to the information Wells learned from discovery. As Wells notes, the nature of the business relationship between Altenburg individually or as Altenburg PC and Skynet was not known to her until Defendants produced the necessary documentation. Under these circumstances, there was no bad faith on Wells' part; she was simply trying to accurately reflect her new understanding of the relationships after receiving discovery.

### C. Prejudice to the Opposing Party

There is no prejudice to the opposing party because Altenburg has not filed an answer and Altenburg PC has not yet been named as a defendant.

### D. Futility of Amendment

The final factor in determining whether the motion to amend should be denied is futility of the proposed amendment. Typically, a plaintiff is allowed to amend her complaint in order to accurately reflect the correct nature of the circumstances surrounding the alleged wrongs. However, when an amendment to the complaint would be futile, leave to amend should not be granted. *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988).

In his brief, Altenburg lists multiple arguments contesting the proposed amendments. But not all of the arguments are clear. For example, some arguments are listed, but never discussed. Others are not clearly stated. Additionally, some sections consist almost exclusively of case citations followed by quoted parentheticals, without any analysis. Still other arguments, while potentially important to this case at some point, are not relevant to determining whether the Court should grant the motion to amend. The Court is simply unable to understand other arguments.

The Court (and Plaintiff for that matter) is not expected to comb through the record, read and research lists of cases, and build defendant's arguments for him. Under these circumstances, the Court will address only the arguments which are relevant, analyzed, and understandable. These include: (1) Whether Wells's claims with the EEOC were filed correctly and whether she exhausted her available EEOC remedies; (2) Whether Wells's claims are adequate under the American with Disabilities Act; (3) Whether Altenburg or his professional corporation is a single or joint employer with Skynet; (4) Whether Wells can add a claim for intentional interference; and (5) Whether the Court has jurisdiction to hear the claims.

### 1. EEOC

Altenburg claims that Wells has not exhausted her administrative remedies with the EEOC. Specifically, Altenburg claims that the parties were not correctly named and that Wells did not file a timely complaint. As best the Court can tell, Altenburg cites *Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 666 (9th Cir. 1980) for his argument that

the failure to name defendants, or allege facts from which it could be inferred that a defendant violated Title VII in an EEOC claim, precludes subsequent action against a defendant.

Here, Wells named Altenburg in her complaint filed January 14, 2015, approximately two weeks before the February 1, 2015 deadline for amending pleadings. Altenburg was therefore correctly and timely named in the complaint. But the complaint did not name Altenburg PC until February 18, 2015, a little over two weeks after the deadline. However, a complaint is valid so long as it alleges facts from which it can be inferred that a claim will be brought. *Id.* Moreover, "Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claims." *Wrighten v. Metro. Hospitals, Inc.*, 726 F.2d 1346, 1352 (9th Cir. 1984) *citing Chung v. Pomona Valley Community Hospital*, 667 F.2d 788, 792 (9th Cir.1982).

Here, Altenburg was served with a valid complaint, which stated a claim against him personally. This was also adequate notice that his professional business could be named because the allegations directly relate to his conduct at his professional corporation, Altenburg PC. Whether he acted in his capacity as an employer, a business owner, or as an individual will be cleared up during discovery, dispositive motions, and potentially trial; but there is no doubt that Wells made allegations sufficient to notify both Altenburg and Altenburg PC that she believed they were involved in the acts giving rise to the EEOC claims.

Altenburg also claims that because the EEOC did not serve defendants within 10 days of filing, Wells's claim should be barred. Altenburg is correct that statutorily the EEOC is required to serve the notice of charge of discrimination with 10 days after it has been filed. But the EEOC's failure to give that notice is not reason to prevent Wells from bringing her claims. "The EEOC's failure to serve the charge on [defendant] does not interfere with [plaintiff's] rights, [and] the commission's failure to act is not [his] responsibility." *Watson v. Gulf & W. Indus.,* 650 F.2d 990, 992-93 (9th Cir. 1981).[1] Wells's complaint is not barred because the EEOC was slow in serving Altenburg.

## 2. ADAAA

Altenburg contends that Wells has not sufficiently pled her Americans with Disabilities Act Amendments Act ("ADAAA") claims, and thus she is barred from bringing the claim against him, individually and as an employer. By amending the ADA in 2008, Congress clarified that under that statute, the term "disability" was to be broadly construed and coverage applied to the "maximum extent" permitted by the ADA and the ADAAA." 122 Stat. at 3553. *Rohr v. Salt River Project Agric. Imp. & Power Dist.,* 555 F.3d 850, 861 (9th Cir. 2009). The ADA states that a disability "means with respect to an individual- (A) a physical or mental impairment that substantially limits one or more

---

[1] *See also, B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002), *as amended* (Feb. 20, 2002), "'A Title VII complainant is not charged with the commission's failure to perform its statutory duties.'" (quoting *Russell v. Am. Tobacco Co.*, 528 F.2d 357, 365 (4th Cir.1975), cert. denied, 425 U.S. 935, 96 (1976)).

**MEMORANDUM DECISION AND ORDER - 7**

major life activities of such individual; (B) a record of such impairment; *or* (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1)(A-C) (2011) (emphasis added). Major life activities include things such as caring for oneself, eating, sleeping, and working. 42 U.S.C.A. § 12102(2)(A) (2011). See *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1233 (9th Cir. 1999). Not all three factors of the ADA disability definition need to be met in order to seek relief under the Act. Furthermore, work is listed as a major life activity, which if limited by a disability, is covered.

Wells pled at length her ADAAA cause of action in her original complaint, as well as the proposed amended complaint. She alleged that she had told Altenburg and other Skynet employees that Altenburg's actions were causing her to experience severe symptoms of depression in the workplace. Wells further alleged that Altenburg directed Skynet to terminate her employment in part because of the depression and associated symptoms (Dkt.21-1). These facts were disclosed when Wells filed her action under the ADAAA. This is sufficient to plead the ADAAA claim.

### 3. Single or Joint Employer

Altenburg asserts that neither he nor his professional corporation is a single or joint employer with Skynet. Without making a final determination on this issue at this early stage in the litigation, the Court notes that Wells asserts sufficient facts to amend the complaint to include Altenburg and Altenburg PC.

"[U]nder the 'single employer' doctrine, two nominally separate companies may be so interrelated that they constitute a single employer subject to liability under Title

VII." *Izaguirre v. Glenwood Motor Lines, Inc.*, 2011 WL 5325658, * 6 (D. Idaho Nov. 3, 2011)(citing *Torres Negran v. Merk & Co., Inc.*, 488 F.3d 34, 40-41 (1st Cir. 2007)). Additionally, an employee is deemed to have "joint employers" if each entity or employer "control[s] the terms and conditions of employment of the employee." *Collier v. Turner Industries Group, LLC*, 797 F. Supp. 2d 1029, 1044 (D. Idaho 2011) (citing *EEOC v. Pacific Maritime Ass'n*, 351 F.3d 1270 (9th Cir. 2003)).

 Regarding single employer claims, the Ninth Circuit has held that two entities should be treated as one for purposes of an employment discrimination claim if they have: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations and (4) common ownership or financial control," *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211 (9th Cir. 1989). Altenburg simply makes the blanket statement that the entities did not have interrelated operations, centralized control, or common ownership or financial control. These blanket assertions, without more, are not enough to prevent Wells from amending her complaint. The allegations in the complaint are sufficient to allege that the operations were interrelated – that was the purpose for the business relationship. As far as common management and centralized control of labor relations, the allegations appear to be that Amy Parslow serves in an administrative capacity for Skynet, Altenburg, and Altenburg PC. And Wells received compensation from both Skynet and Altenburg PC. Moreover, Altenburg's contract seems to indicate that he has some sort of ownership in the Skynet "team."

**MEMORANDUM DECISION AND ORDER - 9**

Regarding the joint employer claim, courts and the Department of Labor consider many factors in determining if someone can be classed as an employer: (1) the degree of the alleged employer's right to control the employee; (2) the degree of supervision of the employee's work; (3) the right to set work schedules; (4) the power to hire and fire; (5) the power to determine pay rates and method of payment; and (6) the power to modify the employment conditions. *EEOC v. Pacific Maritime Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003). While these factors "may be useful" in making that determination, they are not mandatory or all-inclusive. *Real v. Dricsoll Strawberry Assoc., Inc.,* 603 F.2d 748, 754 (9th Cir. 1979).

Altenburg admits that he had a degree of control as well as supervision over Wells, including many aspects of her employment. But he asserts that the key to knowing if someone is a joint employer is if they have the right to hire, supervise, and fire employees. Altenburg contest that he "did not have the right to control [Wells's] employment relationship" (Def.'s Resp. at 8, Dkt.22) and therefore is not a joint employer.

As previously stated, not all parts of the test need be met in order to establish that someone is an employer. Altenburg does not refute Wells's statement that "Altenburg asked Wells to go with him and be his medical assistant because, as he expressed to Wells, he felt he and Wells made a good team" when Altenburg moved his practice from Idaho Orthopaedic to SpineIdaho, PLLC (Dkt.1, ¶11). One could reasonable infer that Altenburg had enough control or sway with Skynet to hire Wells – or to fire her. This is

at least enough to determine that amending the complaint to assert a joint employer is not futile.

### 4. Intentional Interference With Prospective Economic Advantage

As noted above, Wells removed count six from her proposed amended complaint. But she now asserts a tortious interference with economic advantage claim. A plaintiff seeking to prove a claim for intentional interference with a prospective economic advantage must show "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted."[2] *Bank of Commerce v. Jefferson Enterprises, LLC*, 303 P.3d 183, 191 (2013); *Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F.Supp. 2d 1088, 1099 (D. Idaho 2010).

According to the allegations set forth in her amended complaint, Wells had a valid economic expectance in her employment relationship with Skynet. Altenburg knew this –

---

[2] As Altenburg notes, however, the stranger-to-the-contract rule applies in the context of a Tortious Interference claim. *Wilson v. St. Luke's Reg'l Med. Ctr., Ltd.*, No. 1:13-CV-00122-BLW, 2014 WL 7186811, at *11 (D. Idaho Dec. 16, 2014). Because of this, if the Court finds Alternburg is a single or joint employer with Skynet, a tortious interference claim can probably not be sustained as Alternburg cannot interfere with his own contract. When a better understanding of the relevant business relationship is formulated, the Court will know better whether the claim survives. However, the Court must address if the claim is even plausible.

he helped her get the position and was her supervisor. According to the amended complaint, Altenburg intentionally interfered with Wells's employment by suggesting Skynet terminate her. This was allegedly done in retaliation for Wells's testimony in Altenburg's divorce proceedings, Wells's reports to administration about the lack of professionalism and patient care, and Wells's depression and anxiety. This is enough to state a claim.

### 5.  Jurisdiction

On two separate occasions, Altenburg argues that this Court does not have supplemental jurisdiction. First Alternburg claims that there is no federal question under 28 U.S.C. §1331 because Wells did not exhaust her administrative remedies. The Court has already addressed that issue above, concluding that Wells did exhaust her remedies under the EEOC and file appropriate and timely causes of action.

Second, Altenburg asserts that the Court does not have jurisdiction under 28 U.S.C. §1337. Section 1337 relates to commerce and antitrust regulation. Thus, the Court assumes Altenburg meant to reference §1367.

Under §1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367.  Again, given the Court's finding of original jurisdiction under §1331,

the Court may exercise supplemental jurisdiction over the related state claims because they form part of the same case or controversy.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Leave to File Amended Motion for Leave to File Amended Complaint (Dkt. 21-3) is **GRANTED**. Plaintiff must immediately file her Amended Complaint.

2. Defendants' Motion to Dismiss (Dkt. 9) is **DEEMED MOOT**.

DATED: July 13, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 13